## No. 1320.

CHARLES M. THOMPSON, AGENT, vs. C. C. DUSON, SHERIFF, ET AL.

An instrument of writing acknowledging the receipt of a specified sum as a part of the purchase price of a tract of land, the title to which is to be executed at a future date, and the terms of which are to be ascertained by reference to another instrument, is not a sale which transfers the ownership of the property, but is only a promise of sale, on the conditions imposed, and confers the right on the promisee to compel performance on the part of the promisor.

Thompson vs. Sheriff et al.

APPEAL from the Thirteenth District Court, Parish of St. Landry. *Estilette*, J.

*W. S. Frazer*, for Plaintiff and Appellee.

*Kenneth Baillio*, for Defendants and Appellants:

1. A promise to sell amounts to a sale between the parties if clothed with the formalities, provided by C. C. 2440; C. C. 2462, 2456.
2. Id centum est quod certum reddi potest.
3. A vendor's privilege springs from the law alone. C. C. 3249; C. N. 2103; 31 Ann. 729.
4. A suspensive condition is never implied, it must be expressly stipulated. So, in a promise to sell, a vendor cannot defeat the rights of a vendee who has been in possession for several years, by insisting that he (the vendor) has not the benefit of a special mortgage to secure the price when none was expressly stipulated.
5. The mere form of a contract will not be looked to so much as the essence of the contract and the real intent of the parties. Hen., p. 1000, No. 4 and cases cited.
6. In construing it, the manner in which a contract has been executed and treated by both parties, will be considered to determine its true nature. C. C. 1956; Hen., p. 1012, No. 7.
7. The construction will be against a vendor, or a promisor in a contract to sell. Hen., p. 1012, No. 6.
8. Executed contracts. Hen., p. 1011, Nos. 7, 9, 11 and cases cited.
9. Obligations of the ancestors pass to the heirs. C. C. 871.
10. Uncondit onal heirs are absolutely bond. C. C. 882.
11. Acceptance by heirs is express when they assume that quality in a judicial proceeding C. C 88.
12. Plaintiffs in this suit stand in the place of their mother, and are bound by her contracts. They are not third parties to her contracts.
13. When a person by his words or conduct causes another to believe in the existence of a certain state of things, and induces him to act upon same, he is estopped from averring against him a different state of things. Bigelow on Est., pp. 64, 65; 30 Ann. 50.
14. A judicial mortgage attaches, though the title to real estate be not recorded. 35 Ann. 829.
15. A promise to sell, with no reciprocal agreement that a formal sale shall be executed, and with no express stipulation to that effect in favor of both amounting to a proviso or suspensive condition; amounts to a sale between the parties, and will be so treated, where the promisee has gone into possession. 11 R. 349; 12 R. 474; 5 Ann. 656; 6 Ann. 26; 1 L. 314; 3 N. S. 586, 336; 2 L. 460; 6 N. S. 432. The case is different where such agreements or stipulations are expressly included in the contract to sell, amounting to a suspensive condition, and where the promisor remains in possession.
16. In cases such as the one at bar a mortgage attaches to promisee's property. 12 R. 474.
17. A general denial puts at issue plaintiff's capacity where he sues in a representative capacity. 5 L. 405; 7 Ann. 621.

Acceptance of promisee may be proved by evidence dehors the act. 2 L. 460; 3 N. S. 583.

If the Kilpatrick heirs were unaware of the transfer of T. to his wife they should have clearly proved it. Hen., p. 495, No. 2.

Plaintiff in injunction cannot recover counsel fees as damages. 17 L. 263; 4 Ann, 304; 12 Ann. 239; 2 L. 102; 5 L. 246; 14 Ann. 333; 19 L. 357; 13 Ann. 449, 193; 14 Ann. 311. 757 820; 16 Ann. 563; 35 Ann. Calvet vs. Williams.

The opinion of the Court was delivered by

WATKINS, J. Under a writ of *fieri facias*, issued under a judgment in the suit entitled John Chaffe & Sons vs. C. P. Thompson, three-

fifths undivided interest in the Joel Tucker plantation was seized and advertised for sale in satisfaction thereof, and plaintiff, representing the heirs of Mrs. M. W. Kilpatrick, enjoins the sale of one third of said three-fifths thereof on the ground of ownership by their title of inheritance.

The sheriff and seizing creditors join in one answer. They plead the general issue and no cause of action, and aver that the plaintiffs and their deceased mother were well aware of the fact that, for a great while before the seizure complained of, C. M. Thompson and his wife not only claimed said property as owners, but had recorded titles to the rights of Mrs. Kilpatrick, and that Mary E. Glaze, the wife, at, and antecedent to the said seizure, was in the possession thereof as owner, under a *dation en paiement* from her husband, and which had been theretofore duly recorded, and against this assertion of title same is urged as an estoppel.

They further aver that Mary E. Glaze has also enjoined this seizure and sale on the ground of her ownership of the *whole* of the three-fifths interest, including that of Mrs. Kilpatrick, grounded on that *dation*, and on that account, aver that neither of their demands are serious *or bona fide*, and are only intended to *obstruct* their legal proceedings.

They pray for the dissolution of the plaintiff's injunction, with statutory damages of ten and twenty per cent on the amount of the judgment sought to be executed, and special damages of $250.

On the trial the judge *a quo* sustained and perpetuated plaintiff's injunction and quashed the seizure of that part of the property claimed without damages, and the defendants have appealed.

Our decision must turn upon the construction of the following instrument of writing, viz:

" NAVASOTA, Grimes County, Tex., Jan. 30, 1880.

" Received of Chas. J. Thompson, of the parish of St. Landry, State of Louisiana, the sum of five hundred dollars, said amount being the first payment of a part of the purchase-price of a piece of land situated in the parish and State aforesaid, on the left descending bank of Bayou Bœuf. The titles to said lands not yet being made, I hereby obligate myself, my heirs and assigns to make a title to said land, to the said Thompson, when he shall call for the same.

" The terms and conditions of the sale being the same as those in the sale of Mrs. L. B. Waller unto the said Thompson, for a portion of the same tract of land.

" (Signed)                    MARY W. KILPATRICK.

" I authorize my wife to sign the foregoing instrument of writing.

" (Signed)                    A. R. KILPATRICK."

The plaintiff's petition avers that this "instrument of writing" was not intended by their mother to actually and really convey their interests in the property, but that same was only a promise of sale, which was never executed during their mother's lifetime, or since. It is a noteworthy fact that there is no averment in the defendants' answer to the effect that it was a *sale* to Thompson, but, in lieu thereof, the allegations quoted were made of acquiescence and estoppel.

In Broodwell vs. Raines, 30 Ann. 677, this Court had under consideration quite a similar instrument. Its concluding paragraph is as follows, viz:

" Titles to said property to be made at our own convenience, as per our *private* agreement."

The Court says: " Under this agreement, Lane (the promisee), took possession of, and cultivated the plantation for seven years, during which he paid nothing on the purchase-price, and at the end of which he was heavily involved in debt."

Then they proceed to discuss the question of Lane's ownership under this document, and say: " The mere reading of this instrument * * is conclusive on our minds that this was not a sale, but a mere conditional promise to sell.

" The first part of the agreement seems to convey the idea of a sale, but the reference to the *titles*, which are to be made at a future time, shows clearly that the contract was not translative of property, and did not operate a mutation of title."

Citing Knox vs. Payne & Harrison, 13 Ann. 361, and Garret vs. Crooks, 15 Ann. 483.

The two instruments are so perfectly alike in respect to the reference to the execution of titles, that we deem it unnecessary to cite further authority.

In the one under present consideration, the condition is, that the promissor agrees " to make a title * * to the said Thompson when he shall call for the same," while in that just referred to, the titles were to be made at the *mutual convenience* of the parties.

The language employed in the promise of sale to Lane, viz: "I have this day bargained, sold and delivered" are wanting in that to Thompson ; and, if the former was correctly held not to be translative of property, the latter's certainly cannot be. We regard the opinion in the case cited as perfectly correct, and hold that the instrument under consideration to be only a promise on the part of Mrs. Kilpatrick to sell to Thompson, which did not operate a mutation of title, and which

only entitled him, upon full compliance with the conditions therein stipulated, to compel her to make title.

The fact that Thompson entered into a joint possession of the property with others, and used the revenues, and afterwards made a conveyance to his wife, does not exercise any influence over the title, or alter its *status*. The proof does not satisfy us that plaintiff had been advised of the conveyance to Mary E. Glaze. They resided then, and reside now, in the State of Texas, and, while there are some circumstances pointing to their knowledge of it, they are altogether too inconsequential for a court of justice to act upon. The judgment of the court *a qua* does substantial justice between the parties. The demand of plaintiff for damages was properly rejected.

Judgment affirmed.

---

### On Application for Rehearing.

1. The fact that the defendants' counsel did not specially aver that the instrument in question was a title, and operated a mutation of the ownership of Mrs. Kilpatrick in the land, was only cited a ground in support of the converse of that proposition.

The opinion concedes that, whether that instrument was a title or not, *was* a question in the case, and decides it.

2. Our opinion does not lay any particular stress on the question of consideration.

The Code provides that " a promise to sell *amounts to a sale* when there exists a reciprocal consent of both parties as to the thing and the price thereof; but, to have its effect, *either between the contracting parties, or with regard to other persons*, the promise to sell must be vested with the same *formalities* as are prescribed in articles 2439 and 2440, concerning sales, in all cases where the law directs that the sale be committed to writing." R. C. C. 2462.

From these provisions we take it to be clear, that " a reciprocal consent of both parties as to the thing and the price thereof " is essential, and is of the essence of a *promise of sale*, as well as of a *sale*.

There was evidently such " a reciprocal consent " between Mrs. Kilpatrick and Thompson. But those provisions make the further requirement that the promise of sale must be clothed with the same *formalities* as a sale, in order that it shall have effect.

One of the most important of these is an act which purports to transfer the property. R. C. C. 2440. Such we understand to be the true import of the word " act," which is contained in the article. True, it is, that no set phrase, or form of words is necessary to oper-

ate a translation of property; but the ones employed must, *of them-selves*, clearly express that object.

In the instrument we are considering there are no such words, or phrase. On the contrary, the instrument is given the form of a receipt for a portion of the purchase-price advanced upon a sale of certain property which was *to be* completed and *titles* executed to Thompson, as vendee, when he "shall call for the same." This instrument is wanting in the essential formality that is necessary to give it effect as to the creditors of Thompson as a conveyance of the property. It does not vest a title in him.

3. The defendants' counsel, in their application, propound this question, viz:

"Why not declare document A to be a sale, and at the same time decree that the Kilpatrick heirs shall be paid by preference, out of the (proceeds) of the sale, the balance due them on the purchase, before the seizing creditors ?"

We are at a loss to see how this *could* be done.

The creditors have dealt with the land as the property of their debtor, and seized it. Plaintiffs enjoined the advertised sale, claiming ownership. Title *vel non* is the only issue. If the *title* did not pass for one purpose it could not have passed for another. If this promise of sale contains obligations which the defendants, as the creditors of Thompson, may acquire and enforce, this is not the proper proceeding for its ascertainment, or determination. We feel bound to relegate them to some other proceeding for that purpose.

Rehearing refused.